UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christopher Straub, *et al.*,

      Plaintiffs,

v.                                                    Civil Action No. 21-10634

Ford Motor Company,                    Sean F. Cox
                                                      United States District Court Judge

      Defendant.

_____/

**<u>OPINION & ORDER</u>**

Three named Plaintiffs filed this putative class action against Defendant Ford Motor Company, asserting claims relating to their vehicles.  The matter is currently before the Court on two motions.  First, Defendant Ford filed a motion asking this Court to compel one of the three named Plaintiffs (Christopher Straub) to arbitrate his claims against Ford.  Second, Ford filed a Motion to Dismiss that challenges all counts of Plaintiff's First Amended Class Action Complaint.  The motions have been fully briefed by the parties and the Court concludes that a hearing is not necessary.

For the reasons set forth below, the Court shall GRANT Ford's motion asking the Court to compel Plaintiff Straub to arbitrate his claims against Ford.

The Court must then analyze Ford's Motion to Dismiss as to its challenges to the remaining claims in this action, those claims asserted by Plaintiffs James and Christie Ranum.  As explained below, the Court shall GRANT Ford's motion as to the Ranums' claims.  The Ranums now concede that their implied warranty claims fail for lack of privity.   Ford's motion also directly challenged the Ranums' express warranty claims on that same ground and Plaintiffs

1

did not respond – other than to concede that they lack privity with Ford.  As such, the Ranums have conceded (and also waived) their express warranty claims. The Court shall therefore dismiss the Ranums' express warranty claims with prejudice, and also dismiss their derivative Magnuson-Moss Warranty Act claims as well, because they rise or fall with the state-law warranty claims.  Finally, the Ranums' consumer-protection-act claims, asserted under the Florida statute, shall be dismissed as untimely.

## BACKGROUND

On March 22, 2021, Plaintiffs Christopher Straub, and James and Christie Ranum, filed this putative class action against Defendant Ford Motor Company.

After Ford filed a Motion to Dismiss, this Court issued its standard order, giving Plaintiffs the option of either responding to the motion or filing an amended complaint.  (ECF No. 14).  Plaintiffs opted to file an amended complaint and did so on June 18, 2021.

Plaintiff's First Amended Class Action Complaint is now the operative complaint and it includes the same parties.  It includes the following five counts: 1) "Violation of the Magnuson-Moss Warranty Act 15 U.S.C. §§ 2301, *et seq*. (On behalf of the proposed Nationwide Class)" (First Claim for Relief); 2) "Breach of Implied Warranty (On Behalf of the Proposed Classes)" (Second Claim for Relief); 3) "Breach of Express Warranties (On Behalf of the Proposed Classes)" (Third Claim for Relief); 4) "Violation of North Carolina's Unfair Trade Practices and Consumer Protection Law N.C. Gen. Stat. § 75-1.1 (On behalf of the North Carolina Sub-Class)" (Fourth Claim for Relief); and 5) "Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. §§ 501.201, et seq. (On behalf of the Florida Sub-Class)" (Fifth Claim for Relief).

2

Plaintiffs ask the Court to certify a Nationwide Class, a North Carolina Sub-Class, and a Florida Subclass as follows:

Nationwide Class:

> All current and former owners or lessees of a 2015, 2016, 2017, or 2018 model year Ford Edge model vehicles equipped with an Ecoboost 2-liter engine   ("the Nationwide Class").

North Carolina Sub-Class:

> All current and former owners or lessees of a 2015, 2016, 2017, or 2018 model year Ford Edge model vehicles equipped with an Ecoboost 2-liter engine, who reside in the state of North Carolina, and who purchased or leased their vehicles in the State of North Carolina ("the North Carolina Sub-Class").

Florida Sub-Class:

> All current and former owners or lessees of a 2015, 2016, 2017, or 2018 model year Ford Edge model vehicles equipped with an Ecoboost 2-liter engine, who reside in the state of Florida, and who purchased or leased their vehicles in the State of Florida ("the Florida Sub-Class").

(First Am. Compl. at 30). Plaintiff Straub brings his claims on his own behalf and on behalf of the Nationwide Class and the North Carolina Sub-Class, while the Ranums bring their claims on their own behalf and on behalf of the Nationwide Class and the Florida Sub-Class.  (*Id*.).

Plaintiffs James and Christie Ranum ("the Ranums") are citizens of Florida.  (First Am. Compl. at ¶ 26).  "On January 13, 2017, the Ranums purchased a certified, pre-owned 2015 Ford Edge Titanium Eco-Boost from Off Lease Orlando, Florida."  (*Id.*).

Plaintiff Christopher Straub is a North Carolina citizen.  On August 10, 2015, Straub "leased a new 2015 Ford Edge from Crossroads Ford located in Fuquay Varina, North Carolina."  (First Am. Compl. at ¶ 34).  Straub alleges:

3

35.    Prior to his lease of his Class Vehicle, Mr. Straub read advertising about and carefully researched the Ford Edge, and shopped around for the particular vehicle he would lease. He chose to lease his Class Vehicle based on Ford's representations and his reasonable understanding and expectation that it would be reliable and provide safe transportation.

36.    Mr. Straub uses his Class Vehicle for personal, family, or household purposes.

37.    Mr. Straub's Class Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Ford.

38.    Mr. Straub's Class Vehicle came with a New Limited Warranty, including a Powertrain Limited Warranty, which accompanies all Ford vehicles.

39.    In October 2018, at the conclusion of his lease period, Mr. Straub purchased his Class Vehicle.

40.    None of the advertising or information that Mr. Straub reviewed regarding the Class Vehicle prior to his purchase mentioned the Flexplate Defect, nor did the authorized Ford dealer's sales representative disclose the Defect to him while making other affirmative representations to him regarding the Class Vehicle at the time of his lease.

41.    Mr. Straub was not aware of, and never informed about, the Flexplate Defect prior to either leasing or subsequently purchasing his Class Vehicle.

(*Id*. at 8).  Straub alleges that he "either would not have purchased his Class Vehicle, or would have paid less for it, had he been informed about the existence and potential consequences of the Flexplate Defect.  He did not receive the benefit of his bargain."  (*Id*. at ¶ 51).

The lease that Straub signed is attached to Defendant's Motion to Compel as Exhibit A. It is titled, "Motor Vehicle Lease Agreement" and identifies Straub as the Lessee and "Crossroads Ford of Fuquay Varina, Inc." as the Lessor.  It identifies "Ford Motor Credit Company" as the Finance Company and "CAB East LLC" as the Holder.  It does not identify Ford Motor Company as a party to the contract.

4

The lease includes a provision concerning arbitration that states, in pertinent part, as follows:

### READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY

### ARBITRATION

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. *Either you or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party")* may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) *Claims regarding the interpretation, scope or validity of this provision, or arbitrability of any issue except for class certification*; 3) *Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates*; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, *or any such relationship with third parties who do not sign this contract.*

**RIGHTS YOU AND WE AGREE TO GIVE UP**
If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:
- **RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY**
- **RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS  MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION**
- **BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT**
- **RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR**
- **OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT**

. . . .

This contract is subject to the Federal Arbitration Act (9 U.S.C. § 1 et seq.).

(ECF No. 19-1 at PageID.275) (bolding and underlining in original) (italics added for emphasis).

### ANALYSIS

Ford filed two motions: 1) a motion seeking to compel Plaintiff Straub to arbitrate his

claims; and 2) a motion to dismiss that challenges all claims asserted in the First Amended

Complaint.

I.     **Ford's Motion To Compel Plaintiff Straub's Express Warranty And MMWA Claims To Arbitration**

As explained in Section II of this memorandum, in response to Ford's Motion to Dismiss,

Plaintiff Straub now agrees that his implied warranty and consumer-protection-act claims should

be dismissed.  That leaves his express warranty claim and his derivative MMWA claim

remaining against Ford in this case.

Ford's Motion to Compel contends that Straub is required to arbitrate those claims.

Ford's motion contains a primary argument – that it is the arbitrator (and not the Court) who

decides if Straub's claims against Ford are subject to arbitration and the Court should refer the

matter without deciding anything else. Additionally or alternatively, Ford argues that even if this

Court were to reach the question of arbitrability, it should compel arbitration of Straub's claims

because: 1) Straub signed a valid arbitration agreement, and his claims are within its scope; and

2) Ford is entitled to enforce the arbitration clause in Straub's Lease under principles of estoppel.

A.     **Who Decides The Gateway Issue Of Arbitrability Raised Here, The Arbitrator Or This Court?**

First and foremost, Ford contends that because the Lease contains a delegation provision,

the arbitrator (and not this Court) decides whether Straub's claims in this case fall within the

scope of the arbitration agreement and whether Ford can enforce the arbitration agreement as a

non-signatory.

The Federal Arbitration Act reflects the basic principles that "arbitration is a matter of

contract" and that contracts must be enforced "according to their terms."  *Blanton v. Domino's*

*Pizza Franchising, LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (citing *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63,68-69, 130 S.Ct. 2772, 2777, 177 L.Ed.2d 403 (2010)).  "Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute.*"  Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).

But "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center West, Inc.,* 561 U.S. at 68-69, 130 S.Ct. at 2777.  Such an agreement is known as delegation clause. *Swiger,* 989 F.3d at 505.  As the Sixth Circuit explained in *Blanton*, "such an agreement is 'simply an additional, antecedent agreement' about *who* should decide these questions. *Rent-A-Center*, 561 U.S. at 69, 130 S.Ct. 2772. And when parties have agreed to arbitrate 'arbitrability,' a court may not disregard their agreement—even if a particular argument for arbitration seems to be 'wholly groundless.' *Henry Schein*, 139 S. Ct. at 528–31."  *Blanton*, 962 F.3d at 844.

"[O]nly a specific challenge to a delegation clause brings arbitrability issues back within the court's province. *Rent-A-Center,* 561 U.S. at 72, 130 S.Ct. 2772 (unless a party 'challenge[s] the delegation provision specifically,' the court must 'leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator.').  A party seeking to avoid the effects of a delegation clause should raise a challenge at least in its opposition to a motion to compel arbitration.  *Id*.  If a party fails to 'acknowledge [it] (below, or on appeal),' they forfeit any such challenge." *Danley v. Encore Cap. Grp., Inc*., 680 F. App'x 394, 399 (6th Cir. 2017).  A party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, but merely challenging the entire agreement will not suffice." *Swiger*, 989 F.3d at 505-06.

Relying on *Swiger* and *Blanton,* Ford asserts that Straub agreed to a valid and enforceable arbitration agreement with a valid and enforceable delegation clause and, therefore, it is the arbitrator who should decide whether Ford, as a non-signatory, can enforce the agreement and compel arbitration.  In both *Swiger* and *Blanton*, the plaintiff opposing arbitration asserted that they could not be compelled to arbitrate with an entity that was not a party to the arbitration agreement.  In both cases, the Sixth Circuit found that the arbitrator (and not the court) was to decide that issue.

As Straub stresses in his response brief, however, the plaintiff opposing arbitration in both of those cases did not specifically challenge the delegation clause.

In *Swiger,* the Sixth Circuit found that whether a non-signatory to the arbitration agreement at issue could enforce it against the plaintiff presented a question of arbitrability that the agreement delegated to the arbitrator.  In so ruling, the court stressed that the arbitration agreement at issue "includes *an unchallenged* delegation provision."  *Swiger,* 989 F.3d at 503 (emphasis added). The court noted that the plaintiff "opposed the motion [to compel arbitration], urging generally the agreement's unenforceability."  *Id*. at 504.  It further noted that the plaintiff "has not once mentioned, let alone challenged, the delegation clause."  *Id*. at 506.

Notably, in *Blanton*, the Sixth Circuit included the following footnote to "clarify one question not before" it in that case:

> The underlying dispute in this case is whether Domino's (as a non-signatory) has any right to enforce the arbitration agreement as a whole. And both parties have litigated this case on the view that the first question we must answer is whether Piersing agreed to arbitrate that question of "arbitrability." *But there might be another, antecedent question here—namely, whether Domino's has any right to enforce the specific provision of the agreement in which Piersing purportedly agreed to arbitrate "arbitrability." Cf. Rent-A-Center*, 561 U.S. at 69–71, 130 S.Ct. 2772 (treating the broader arbitration agreement as separate from the

8

specific agreement to arbitrate "arbitrability" and distinguishing between challenges to the former and challenges to the latter). Because that is a distinct question that is not before us, we express no views on it. *See United States v. Sineneng-Smith*, ––– U.S. ––––, 140 S. Ct. 1575, 1579, 206 L.Ed.2d 866 (2020) (reiterating the "principle of party presentation" under which courts "rely on the parties to frame the issues for decision" and decide only the "matters the parties present" (citation omitted)).

*Blanton,* 962 F.3d at 845 n.1 (emphasis added).

Straub's brief stresses that, unlike the plaintiffs in *Swiger* and *Blanton, he is challenging the delegation clause itself.*

Not every kind of challenge to a delegation clause brings arbitrability issues back within the court's province. Thus, the Court must look at the type of challenge to the delegation clause that Straub is making. If he makes just a general challenge to the entire agreement (e.g., Ford was not a party to the Lease and therefore has no right to enforce any provision of it), that does not bring the issue of arbitrability back before the Court.

But the Court reads Straub's response brief as raising the antecedent issue suggested in *Blanton* – whether Ford has any right to enforce the specific provision of the Lease in which Straub purportedly agreed to arbitrate arbitrability (the delegation clause).

Following *Blanton*, two different district courts within the Sixth Circuit have encountered the precise situation addressed in the above footnote – where the plaintiff challenges the validity and enforceability of the delegation provision itself. *Becker v. Delek US Energy, Inc.*, 493 F.Supp.3d 644, 657-58 (M.D. Tenn. 2020) ("The case now before this court involves the precise situation recognized by, but not presented in, *Rent-A-Center* or *Blanton*: the plaintiffs challenge the validity and enforceability of the delegation provision itself."); *Altenhofen v. Southern Star Central Gas Pipeline, Inc.*, 2020 WL 6877575 at *4 (W.D. Ky. 2020). Because the plaintiffs in

those cases expressly challenged the validity and enforceability of the delegation clause itself, those district courts found that the issue is a question for the court, not the arbitrator. *Becker*, 493 F.Supp.3d at 657-58 ("[B]ecause the plaintiffs challenge the validity and enforceability of the delegation provision, the court must consider its enforceability in the specific context of the facts presented here."); *Altenhofen, supra*, at *4 ("because Altenhofen expressly challenges the validity of the delegation provision, whether Altenhofen's claims against Southern Star are covered by the arbitration agreement is a question for the Court.").

In light of that footnote in *Blanton,* and the above post-*Blanton* district court decisions, this Court finds that it (rather than the arbitrator) decides whether Ford can enforce the delegation clause against Straub.

**B.      Can Ford Enforce The Delegation Clause Against Straub?**

If a party challenges a "delegation clause specifically, the court must resolve that claim before sending the suit to arbitration." *Anderson v. Charter Communication, Inc*., __ F. App'x __, 2021 WL 2396231 at *2 (6th Cir. June 11, 2021) (citing *Rent-A-Center,* 561 U.S. at 72)). Thus, as in *Becker* and *Altenhofen*, the district court needs to decide if the party seeking to enforce the delegation clause against the plaintiff may do so. *See Becker*, 493 F.Supp.3d at 658 (addressing whether the defendant can enforce the delegation provision against the plaintiff); *Altenhofen, supra*, at *5.

It is well-established that there must be "clear and unmistakable' evidence that the parties agreed to have an arbitrator decide questions of arbitrability. *Swiger*, 989 F.3d at 505. Thus, the Court would normally look to the delegation clause and decide whether there is clear and unmistakable evidence that the parties agreed that Ford can enforce it against Straub. If there is,

10

the matter should be referred to the arbitrator and the Court's inquiry ends there.  But if there is not such evidence, the issue of arbitrability is decided by the Court.

The parties appear to agree that, if Ford cannot enforce the delegation clause, then the Court decides the issue of whether to compel Straub to arbitrate his claims against Ford.  (*See* Pl.'s Br. at 4) (Arguing that because there is no evidence that Straub "agreed to arbitrate arbitrability with Ford," the Court must decide the "issue of whether to compel arbitration."); Def.'s Br. at 10 (arguing that "even if this Court were to reach the questions of arbitrability, it should compel arbitration of Mr. Straub's claims against Ford.").

Here, however, there is not a stand-alone delegation clause.  Rather, the delegation clause at issue is subsumed within the same provision that requires arbitration, that states as follows:

> Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court.   *Either you or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party")* may choose at  any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration.  Neither party waives the right to arbitrate by first filing suit in a court of law.  Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) *Claims regarding the interpretation, scope or validity of this  provision, or arbitrability of  any  issue except for class certification*;  3) *Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates*; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or  relationship, including that with the dealer, *or any such relationship with third parties who do not sign this contract.*

(ECF No. 19-1 at PageID.275).

Given that there is no stand-alone delegation clause, this Court does not see how the Court could find "clear and unmistakable evidence" that the parties agreed that Ford could enforce the delegation clause against Straub.

Under these circumstances, the Court shall proceed to decide the issue of whether Ford,

as a non-signatory, can compel Straub to arbitrate the claims he asserts against Ford in this case.

**C.     Can Ford, As A Non-Signatory To The Lease, Compel Straub To Arbitrate His Warranty Claims Against Ford That He Asserts In This Case?**

Ford makes two arguments as to why it believes the Court should compel Straub to arbitrate his claims against Ford: 1) because Straub signed a valid arbitration agreement, and his claims against Ford are within its scope; and 2) because Ford is entitled to enforce the arbitration clause in the Lease with Ford Credit under principals of estoppel.

**1.     Are Straub's Warranty Claims Against Ford Within The Scope Of The Arbitration Agreement In The Lease?**

Ford argues that Straub signed a valid arbitration agreement and that his claims against it in this case are within its scope.  (Def.'s Br. at 11).

Notably, Ford *does not* claim to be a third-party beneficiary of the Lease.[1]  (*See* Def.'s Reply Br. at 5) (Stating that Ford's arguments do not rest on third-party beneficiary status.). Rather, Ford contends that Straub's claims are arbitrable *based on the language of the arbitration agreement* in the lease.  (*Id*.) (emphasis added).

Ford notes that Straub signed the Lease, that it contains a "conspicuous arbitration provision," and that Straub "also signed a confirmation that he read the arbitration provision and agreed to arbitrate claims in accordance with it."  (Def.'s Br. at 11).  Ford asserts that this "Court should hold him to his agreement and compel arbitration."  (*Id*.).  Ford then moves on to discuss the *scope* of the arbitration agreement, and asserts that its breadth encompasses Mr. Straub's claims.  (*Id*. at 12).

_____

[1]Thus, the Court need not address Straub's arguments concerning third-party beneficiary status.

In response, Straub asserts that his claims against Ford are not within the scope of the arbitration agreement in the Lease.  Straub notes that the "question of *what types of claims* may be subject to arbitration is different from the question of *who may request* the arbitration."  (Pl.'s Br. at 8) (emphasis added). He contends that "[e]ven if the language describing the types of claims that may be arbitrated is 'sweeping,' which parties may seek arbitration is not."  (*Id*. at 9).  Straub contends that "[i]f the Court focuses its analysis on determining *who* is entitled to ask for arbitration, as opposed to *what types* of claims may be arbitrated, the answer is obvious – only the three specifically enumerated entities – the Lessor, Finance Company, and Holder.  Being none of those, Ford has no right to seek arbitration under the Agreement."  (*Id*. at 10) (emphasis added).

Plaintiff has the better argument.  That is because, after all, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.  *Gridsmart Tech., Inc. v. Marlin Controls, Inc.,* 701 F. App'x 488, 490 (2017) (citations omitted).  "Therefore, the first place to turn" is the language of the arbitration provision in the Lease.  *Id*.  It provides as follows:

> Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court.  **Either you or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration.**  Neither party waives the right to arbitrate by first filing suit in a court of law.  Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise;  2) Claims regarding  the interpretation, scope or validity of this provision, or arbitrability of any issue except for class certification;  3)  Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

(ECF No. 19-1 at PageID.275) (bolding added for emphasis).  Thus, under plain language of the agreement, Ford is not a party who may choose to have a claim decided by arbitration.

> ### 2.    Is Ford Entitled To Enforce The Arbitration Clause In The Lease With Ford Credit Under Principles Of Estoppel?

Ford also asserts, as an independent basis to compel arbitration, that it is entitled to enforce the arbitration clause in Straub's Lease with Ford Credit under principles of estoppel. (Def.'s Br. at 13).  In making this argument, Ford asserts:

> Although Ford is not a party to the arbitration clause, Ford may nevertheless enforce it under principles of estoppel.  Were the rule otherwise – if a plaintiff could "avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint" – then the "effect of the rule requiring arbitration would, in effect, be nullified."  *Arnold v. Arnold Corp.- Printed Communications For Business,* 920 F.2d 1269, 1281 (6th Cir. 1990).

(Def.'s Br. at 13-14).

"Whether a nonsignatory to an agreement containing an arbitration clause may compel a signatory to arbitrate pursuant to equitable estoppel is governed by state law."  *In re Automotive Parts Antitrust Litigation*, 2017 WL 3579753 (E.D. Mich. 2017).  Both parties agree that North Carolina applies to Straub's Lease and governs this issue.  (*See* Def.'s Br. at 14; Pl.'s Br. at 16).

Both parties have directed the Court to North Carolina authority on this issue, which follows Fourth Circuit law on the issue.  *See Greerwalker, LLP v. Jackson*, 2016 U.S. Dist. LEXIS 91640 (W.D. N.C. 2016) (citing *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4h Cir. 2005)); *Klopfer v. Queens Gap Mountain, LLC*, 816 F.Supp.2d 281, 292 (W.D. N.C. 2011) (citing *American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 626-27 (4th Cir. 2006)).

It is well-established that a nonsignatory to an arbitration agreement may, in certain

situations, compel a signatory to arbitrate the signatory's claims against the nonsignatory

"despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *American*

*Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). "One such situation exists

when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the

arbitration clause." *Id*.

The parties agree that the following two circumstances set forth in *Brantley* have been

recognized by the Fourth Circuit as warranting equitable estoppel:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to
> compel arbitration in two different circumstances. First, equitable estoppel
> applies when the signatory to a written agreement containing an arbitration clause
> must "rely on the terms of the written agreement in asserting [its] claims" against
> the nonsignatory. When each of a signatory's claims against a nonsignatory
> "makes reference to" or "presumes the existence of" the written agreement, the
> signatory's claims "arise [ ] out of and relate [ ] directly to the [written]
> agreement," and arbitration is appropriate. Second, "application of equitable
> estoppel is warranted . . . when the signatory [to the contract containing the
> arbitration clause] raises allegations of . . . substantially interdependent and
> concerted misconduct by both the nonsigntaory and one or more of the signatories
> to the contract."

*Brantley*, 424 F.3d at 396.

Only one of those two circumstances has to exist in order to compel arbitration under an

estoppel theory. Ford contends that they both exist here. Ford argues that estoppel is

appropriate here because "Straub references and presumes the existence of his lease (and the new

vehicle warranty it included); he alleges that the dealership that leased him his car participated

with Ford in the allegedly improper transaction; and his claims depend on duties Ford allegedly

owed him as a result of his lease contract." (Def.'s Br. at 15).

Ford notes that "[c]ourts around the country have applied equitable estoppel to compel

signatory plaintiffs to arbitrate disputes against non-signatory automobile manufacturers where a

15

plaintiff entered into an agreement with a related third-party, such as a dealer, lessor, or financing company." (*Id.*). Ford's brief discusses a number of such cases. It persuasively argues:

> Straub's lease agreement provides him with the warranty he seeks to enforce against Ford, Ex. A ¶ 12, and establishes the monthly and lease-end payments he says were too high, *id.* ¶10 (purchase option price); *id.* at ¶¶ 1-7 (lease terms); *see, e.g., MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 948 (11th Cir. 1999) (allowing a non-signatory to compel arbitration under an estoppel theory where the plaintiff's claims depended on "her contractual obligation to pay" a specified amount). Mr. Straub's claims are all premised on "overpayment" "at the point of sale." ECF No. 15, ¶ 151; *see also id.*¶ 40 ("None of the advertising or information that Mr. Straub reviewed regarding the Class Vehicle prior to his purchase mentioned the Flexplate Defect, nor did the authorized Ford dealer's sales representative disclose the Defect to him while making other affirmative representations to him regarding the Class Vehicle at the time of his lease."), 51 ("Mr. Straub either would not have purchased his Class Vehicle, or would have paid less for it, had he been informed about the existence and potential consequences of the Flexplate Defect. He did not receive the benefit of his bargain."),160 ("As a result of Ford's breaches of implied warranties, Plaintiffs and Class Members did not receive the benefit of their bargain and suffered damages at the point of sale"),168 (same, as to breach of express warranties),181 ("Had Plaintiff Straub ... known that the flexplates in the Class Vehicles were defective and would fail prematurely, they either would not have purchased the Class Vehicles or they would have paid less for them.").
>
> Under principles of equitable estoppel, Mr. Straub cannot accept and enforce a warranty from Ford that he received under the terms of the lease agreement, argue that Ford's actions rendered the amount he paid under the lease agreement too great, and simultaneously avoid the arbitration provision he executed within that same contract.

(Def.'s Br. at 20-21).

In response, Plaintiff notes that "[m]any courts have analyzed the type of but-for argument that Ford asserts here" and argues that the "better-reasoned decisions" have found that the existence of a sales or lease contract is insufficient to allow a manufacturer to invoke equitable estoppel. Plaintiff heavily relies on *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013). As Ford notes in its Reply Brief, *however, Kramer* is a Ninth Circuit decision

16

purporting to predict California law, not North Carolina or Fourth Circuit law on this issue.

In its reply brief, Ford also notes that, in responding to its Motion to Dismiss in this case, "Straub relies on theories of omission-based fraud *at the time of this Lease* to support both his warranty and consumer-protection claims. *See, e.g.* ECF No. 15, ¶¶ 40, 118. Straub says, for example, that Ford's allegedly fraudulent omissions *at the time and place of his Lease* renders unconscionable the 'enforcement of any [ ] limitations" *on the warranty he received in his Lease*. *See, e.g., id.* ¶ *166."* (Def.'s Reply Br. at 5). Ford further notes that Straub "also argues that those same alleged omissions somehow deprive him of the benefit of the bargain that he struck (with the dealership) *in his Lease. See, e.g., id.* ¶ 107. Straub's claims, therefore, all depend upon the Lease Agreement." (*Id*. at 5-6).

While there are reasoned arguments and case law from various courts going both ways on this issue, the Court finds that Ford has the better argument on this issue. The claims Straub asserts against Ford make reference to, and depend upon, his having entered into the Lease. Ford's duty to comply with its warranty arose only when Straub leased the vehicle. Had Straub not signed the Lease for that vehicle, he would not have received the warranty at issue from Ford. The Court rules that Defendant Ford is entitled to enforce the arbitration clause in Straub's Lease under principles of estoppel.

Accordingly, the Court shall grant Ford's motion asking this Court to compel Plaintiff to arbitrate his express warranty claim and his MMWA claim asserted against Ford and this action shall be stayed as to those claims.

This Court must still, however, analyze Ford's Motion to Dismiss as it relates to the claims asserted by the Ranums.

II.     **Ford's Motion To Dismiss Plaintiffs' First Amended Class Action Complaint**

Ford's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint is brought under Fed. R. Civ. P. 8, 9(b) and 12(b)(6).

A.     **Standards Of Review**

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as trued, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.*  When assessing the sufficiency of a plaintiff's claim, this Court must accept of the complaint's factual allegations as true.  *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937.  Thus, a plaintiff must provide "more than labels and conclusions," or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do no suffice."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Rule 9(b) of the Federal Rules of Civil Procedure "sets the pleading standard for 'alleging fraud or mistake' and governs state fraudulent concealment claims in diversity cases." *Smith v. General Motors, LLC*, 988 F.3d 873, 883 (6th Cir. 2021).  "Rule 9(b) requires parties to

'state with particularity the circumstances constituting fraud or mistake' for fraud claims but permits general allegations about the defendant's knowledge to avoid a 12(b)(6) motion to dismiss.  The adequacy of 9(b) pleadings in the face of a motion to dismiss under 12(b)(6) are analyzed under the *Twombly/Iqbal* framework." *Id.* "To satisfy Rule 9(b), 'the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury.'" *Smith*, *supra* (citations omitted).

### B.      Implied Warranty Claims

Ford's motion challenges Plaintiffs' implied warranty claims on several grounds. In response to Ford's Motion to Dismiss, "Plaintiffs agree that they lack direct privity with Ford and that no applicable exception to the privity requirement exists."  (Pls.' Br, ECF No. 27, at 10). Thus, the Ranums' implied warranty claims shall be dismissed with prejudice.

### C.      Express Warranty And MMWA Claims

Ford's motion includes a number of challenges to the express and implied warranty claims asserted by the Ranums under Florida law, and their derivative MMWA claims asserted under federal law.

Among other things, Ford's motion asserts that the Ranums' express and implied warranty claims fail under Florida law, for lack of privity.  In support of that argument, Ford argues:

> Under Florida law, "[n]o privity exists, and a breach of warranty claim fails, where plaintiff did not purchase the product from the defendant."  *Kaiser v. Depuy Spine, Inc*., 944 F. Supp.2d 1187, 1193 (M.D. Fla. 2013); *Jackmack v. Boston Scientific Corp*., 2021 WL 1020981, at *1 (M.D. Fla. March 17, 2021) (express); *David v. American Suzuki Motor Corp*., 629 F. Supp.2d 1309, 1321 (S.D. Fla. 2009) (implied); *Padilla v. Porsche Cars N. Am., Inc*., 391 F. Supp.3d

1108,

(*See* Def.'s Br. at 8).

Ford's motion also challenged the derivative MMWA claims asserted by the Ranums. (*See* Ford's Br. at 12) (arguing that without a predicate state-law warranty claim, the MMWA claims fail too).

"The Magnuson–Moss Warranty Act provides a federal cause of action for a 'consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under a written warranty or implied warranty.' " *Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d at 1017 (alteration omitted) (quoting *Bennett v. CMH Homes, Inc.,* 770 F.3d 511, 512 n.1 (6th Cir. 2014)). As this Court has previously explained, claims asserted under the Magnuson–Moss Warranty Act "stand or fall" with express and implied warranty claims under state law.  *Gant v. Ford Motor Company*, 517 F.Supp.3d 707, 718 (E.D. Mich. 2021).

Notably, in response to Ford's motion, both the Ranums and Straub conceded that "they lack direct privity with Ford and that no applicable exception to the privity requirement exists." (Pls.' Br. at 10).  Their brief included that concession in a paragraph titled, "Plaintiffs' Implied Warranty Claims."  (*Id.*) (emphasis added).  But Ford's motion also directly challenged the Ranums' *express warranty claims* on that same ground, lack of privity.  Plaintiffs' brief did not respond to Ford's challenge to the Ranums' express warranty claim as failing due to lack of privity – other than to concede that they lack privity with Ford.  As such, the Ranums have therefore conceded (and also waived) their express warranty claims.

The Court shall therefore dismiss the Ranums' express warranty claims with prejudice. And given that ruling, the Court shall also dismiss their derivative MMWA claims as well,

because they rise or fall with the state-law warranty claims.

That leaves the Ranums' consumer-protection-act claim under the Florida statute.

**D.     Challenges To Consumer-Protection Claims Under Florida Statute**

The Ranums assert a consumer-protection-act claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  Ford challenges this count on a number of fronts. Among other things, Ford contends that the Ranums' FDUTPA claim must be dismissed because it is untimely and because the Ranums have failed to allege fraudulent concealment with sufficient particularity.

Again, the Ranums are citizens of Florida.  (First Am. Compl. at ¶ 26).  "On *January 13, 2017*, the Ranums purchased a certified, pre-owned 2015 Ford Edge Titanium Eco-Boost from Off Lease Orlando, Florida."  (*Id.*) (emphasis added).

"The statute of limitations" for the Ranums' "claim under FDUPTA is four years." *Padilla v. Porsche Cars North Am., Inc*., 391 F.Supp.3d 1108, 1112 (S.D. Fla. 2019) (citing Fla. Stat. § 95.11(3)(f) and *Speier -Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050 at *6 (S.D. Fla. 2014)).  A FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect.  *Padilla, supra*. Where it appears from the face of the plaintiff's complaint that the claim is time-barred, the plaintiffs "bear the burden of pleading allegations sufficient to toll the statute of limitations."  *Padilla, supra.*

Here, in challenging the timeliness of the Ranums' FDUPTA claim, Ford's brief contends that the claim is untimely regardless of whether the claim accrued in 2015 (when the vehicle was sold to its first purchaser) or whether it accrued based upon the Ranums' January 13, 2017 purchase date.  That is because the Ranums filed this action on March 22, 2021 – four

21

years, two months, and nine days after the January 13, 2017 purchase alleged in the complaint. Thus, the FDUTPA appears time-barred from the face of the complaint.

In response, Plaintiffs assert that "the Ranums sufficiently allege that any applicable statute of limitation has been tolled due to fraudulent concealment." (Pls.' Br. at 12). It is therefore Plaintiffs' burden to plead allegations sufficient to toll the statute of limitations. *Padilla, supra*, at 1113.

"To invoke fraudulent concealment, [the Ranums] must plead facts establishing [Ford] 'engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment.'" *Padilla, supra*, at 1113. The Ranums "must also plead factual matter establishing that [Ford] 'deliberately and actively concealed the material facts for the purpose of inducing" the Ranums to delay filing this action. *Id*. (citations omitted). Moreover, as explained in *Padilla*, a heightened pleading standard applies:

> A fraudulent concealment claim is subject to Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud shall be stated with particularity. *Id*. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc*., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting *Ziemba v. Cascade Intern., Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001)). To meet this standard, the Class Action Complaint needs to identify: (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statements; (3) the content and manner in which the statements misled Plaintiffs; and (4) what [the defendant] gained by the alleged fraud. *Id*. (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007)).

*Padilla, supra*, at 1113-14.

"Applying these standards to FDUTPA claims stemming from alleged defects in motor

22

vehicles, courts have consistently held that even assuming the defendants knew of the defect, the nondisclosure itself does not toll the statute of limitations." *Lewis v. Mercedes-Benz USA, LLC*, __ F.Supp.3d __, 2021 WL 1216897 (S.D. Fla. March 30, 2021); *see also Padilla, supra*, at 1114 ("At most, Plaintiffs' allegations taken as true constitute mere 'inaction' – which is 'wholly insufficient' to constitute 'active and willful concealment.'"); *Licul v. Volkswagen Group of Am. Inc.*, 2013 WL 6328734 at *6 (S.D. Fla. 2013) ("These allegations of Volkswagen's inaction and non-disclosure are wholly insufficient to supply the affirmative steps taken to prevent Plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate."); *Speier-Roche, supra*, at *8 (Dismissing FTUPTA claim as time barred where "Plaintiff's allegations amount to a claim of mere 'nondisclosure' which, under Florida law, is legally insufficient to toll the statute of limitations.")

Like the plaintiffs in the above cases, the Ranums' allegations amount to a claim of mere non-disclosure of the alleged defect (*see* First Am. Compl. at 27-29), which is insufficient under Florida law to toll the statute of limitations under a fraudulent concealment theory.  The Court shall dismiss the Ranums' FDUPTA claim with prejudice as time-barred.

## CONCLUSION & ORDER

As explained above, Plaintiff Christopher Straub now agrees that his implied warranty and consumer-protection-act claims against Defendant should be dismissed and, therefore, this Court DISMISSES those claims with prejudice.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Arbitration is GRANTED to the extent that the Court ORDERS that Plaintiff Christopher Straub shall arbitrate

his express warranty claim and his derivative MMWA claim against Defendant and this action is hereby STAYED as to those claims.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is GRANTED to the extent that the Court DISMISSES all claims asserted by James and Christie Ranum with prejudice.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge


Dated:  November 2, 2021